UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:09-CV-1628 (CEJ) |
| | ) | |
| BRENT M. HARGROVE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on the motion by plaintiffs for default judgment against defendants Brent M. Hargrove and H & H Farms.

**I.  Background**

Plaintiffs bring this action asserting claims of patent infringement (Counts I and II), conversion (Count III), unjust enrichment (Count IV), and breach of contract (Count V). Each claim is based on the allegation that defendants saved and replanted plaintiffs' patented, genetically-modified Roundup Ready® cotton seed without permission and in violation of the parties' licensing agreement. Plaintiffs also claim that defendants' actions constitute willful infringement under 35 U.S.C. § 284 and that this case qualifies as exceptional under 35 U.S.C. § 285.

The record reflects that defendants filed a joint answer on November 25, 2009. Plaintiffs filed a motion for sanctions on April 9, 2010 based upon defendants' failure to comply with two court orders compelling defendants to respond to plaintiffs' interrogatories and requests for production. The motion was granted, and the defendants were ordered to provide delinquent discovery responses and to pay plaintiffs' attorneys' fees. On July 1, 2010, defendants' counsel filed a motion to

withdraw based upon defendants' failure to respond to counsel's communications. On July 9, 2010, the Court granted the motion to withdraw and ordered defendant H & H Farms to retain new counsel not later than August 6, 2010. No attorney has appeared for H&H Farms, and the Court has not received any communication or filings from either defendant since granting their attorney's motion to withdraw.

On November 3, 2010, plaintiffs filed a second motion for sanctions based upon H & H Farm's failure to retain counsel and the failure of both defendants to provide discovery responses as ordered by the Court. On January 11, 2011, the Court granted plaintiffs' second motion for sanctions and ordered that defendants' joint answer be stricken from the record. The Clerk of the Court entered default against defendants on April 15, 2011 under Fed. R. Civ. P. 55(a).

## II. Legal Standard

"[E]ntry of default by the Clerk does not entitle the non-defaulting party to a default judgment as a matter of right." United States v. $345,510.00 in U.S. Currency, 2002 WL 22040 at *2 (D. Minn. 2002). Default judgments are not favored in the law. United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre, 983 F.2d 128, 130 (8th Cir.1993). Whether to grant default judgment is a separate question within the discretion of the Court. See Fingerhut Corp. v. Ackra Direct Marketing Corp., 86 F.3d 852, 856 (8th Cir. 1996). After default has been entered, the defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. See Taylor v. City of Ballwin, 859 F.2d 1330, 1333 (8th Cir. 1988). However, while factual allegations in the complaint are generally taken as true, those allegations relating to the amount of damages must be proven. Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001); Stephenson v. El-Batrawi, 524 F.3d 907, 916-17 (8th Cir. 2008)

(district court must provide detailed findings regarding damage calculations, even in default judgments, and "generic reference to evidentiary support for the damages determination" is insufficient. Id. at 917).

If the damages claim is indefinite or uncertain, the amount of damages must be established in a supplemental hearing or proceeding to a reasonable degree of certainty. Everyday Learning Corp., 242 F.3d at 818-19 (8th Cir.2001). "The need for a hearing is within the sound discretion of the district court under Fed.R.Civ.P. 55(b)(2)(B)." Stephenson, 524 F.3d at 916 (citing Taylor v. City of Ballwin, Mo., 859 F.2d 1330, 1333 (8th Cir.1988)).

### III. Discussion

Plaintiffs seek a default judgment awarding compensatory damages in the amount of $371,956, treble statutory damages for willful infringement under 35 U.S.C. § 284, a permanent injunction enjoining defendants' future infringement, prejudgment interest, attorneys' fees, and costs.

#### A. Liability

As to Counts I and II, the Court finds, based on the factual allegations in plaintiffs' complaint, that defendants have infringed upon U.S. Patent Nos. 5,352,605 and RE 39,247 E (the '605 and '247 patents) owned by plaintiffs and that such infringement was willful. See Stephenson, 524 F.3d 907. The defendants' replanting of saved seed that contains plaintiffs' patented genetic sequences constitutes infringement. Monsanto Co. v. Ralph, 382 F.3d 1374 (Fed. Cir. 2004); Monsanto Co. v. McFarling, 488 F.3d 973 (Fed. Cir. 2007); Monsanto Co. v. David, 516 F.3d 1009 (Fed. Cir. 2008).

As to plaintiffs' remaining claims, the Court concludes that plaintiffs have also

established liability as to their breach of contract and unjust enrichment claims. However, they have not established that defendants' conduct constitutes conversion under Missouri law. See Monsanto Co. v. Hill, No. 4:03-CV-181-CEJ, 2004 WL 4996339 (E.D. Mo. 2004) (copying a patented product is insufficient to support claim of conversion); Wheat v. Morrell, No. 6:09-CV-03142, 2010 WL 3522803 (W.D. Mo. 2010) (same). Plaintiffs have asserted their breach of contract and unjust enrichment claims as alternative theories to their infringement claims. They have also provided calculations for compensatory damages solely as to their infringement theories. As such, the Court will only address the issue of damages under plaintiffs' claims for infringement, except with respect to attorneys' fees and costs, which are specifically provided for in the parties' licensing agreement as discussed below.

### B.  Infringement Damages

The amount of damages in a patent infringement case must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A reasonable royalty "may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1554 (Fed. Cir.1995). An established royalty is the royalty the patentee uniformly receives when it licenses its invention to others for use comparable to the defendant's infringing use. Monsanto Company v. McFarling, 488 F.3d 973, 979 (Fed. Cir.2007). The hypothetical negotiation approach "requires the court to envision the terms of a licensing agreement reached as a result of a supposed meeting between the patentee and the infringer at the time the

infringement began." Rite-Hite Corp., 56 F.3d at 1554.[1]

Plaintiffs assert that they are entitled to reasonable royalty damages in an amount between $364,779 and $371,956, based upon defendants' infringing acts.[2] Plaintiffs have submitted an affidavit by Donald Harlan, Ph.D., who states that he led a field inspection team that tested numerous samples taken from defendants' fields on December 17 and 18, 2008. (Doc. #55-1). Dr. Harlan found that defendants planted approximately 5,076 acres of Roundup Ready® cotton with a seed density of not less than 9.4 pounds per acre. According to Dr. Harlan, defendants would have had to use no less than 47,637 pounds (953 fifty-pound bags) of plaintiffs' Roundup Ready® cotton seed for the 2008 season. However, according to the expert report of Timothy Taylor, Ph.D, the defendants purchased only 250 bags of Roundup Ready®

---

[1]Courts look to the fifteen factors set out in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116 (S.D.N.Y.1970) to determine a reasonable royalty using the hypothetical negotiation approach. The Georgia-Pacific factors are: (1) royalties that a patentee receives for the patent in suit; (2) rates licensee pays for use of other comparable patents; (3) nature and scope of the license; (4) the licensor's established policy regarding licensing of its technology; (5) commercial relationship between the parties; (6) effect on and extent of derivatives or convoyed sales; (7) duration and term of license; (8) established profitability of the product made under the patent, its commercial success, and popularity; (9) utility and advantage of the patented article over old modes; (10) nature of patented invention; character of commercial embodiment of the patent as owned or produced by the licensor; (11) extent to which infringer has made use of invention; (12) portion of profit or selling price customarily allowed; (13) portion of realizable profit attributable to invention; (14) the opinion testimony of qualified experts; (15) the amount a willing licensor and licensee would agree upon at the time of infringement, had both been reasonably and voluntarily trying to reach agreement, including the amount of profit the licensee would be willing to contribute to the license. Id.

[2]Plaintiffs and their experts utilize two different studies in measuring the reduction in costs resulting from the use of Roundup Ready® cotton seed versus conventional seed. They do not specify which of these studies is a more accurate estimate of damages.

cotton for the 2008 growing season. This means that defendants planted approximately 3,746 acres with infringing saved seed.

Dr. Taylor opined that a reasonable royalty would be between $97.38 and $99.20 per acre (approximately $519 to $529 per fifty-pound bad). Dr. Taylor bases these figures on the estimated economic benefits enjoyed by defendants as a result of their infringement in addition to the monitoring cost per acre incurred by plaintiffs to enforce their seed-licensing agreements, which plaintiffs would seek to recover in a hypothetical royalty negotiation. Dr. Taylor's report also incorporates an analysis of the fifteen non-exclusive factors identified in Georgia-Pacific Corp., 318 F. Supp. 1116. See Ralph, 382 F.3d at 1383 (jury was properly instructed to consider the Georgia-Pacific factors in determining the reasonable royalty for replanting saved seed). The Court finds Dr. Taylor's methodology to be a reasonable and sound approach to calculating a reasonable royalty. Further, the amount determined by Dr. Taylor is also consistent with the reasonable royalty damages upheld by the Federal Circuit in Ralph. Id. at 1384. (affirming this Court's determination of a reasonable royalty in the amounts of $548 and $556 per fifty-pound bag of saved and replanted Roundup Ready® cottonseed for the 1998 and 1999 growing seasons). Because plaintiffs do not address whether the low end or the high end of the range for per-acre damages should be applied, the Court will average the figures and award plaintiffs royalty damages in the amount of $368,367.50. See David, 516 F.3d at 1018 (not abuse of discretion for district court to average two alternate figures in calculating damages so long as both are supported by the record).

### B. Statutory Damages Enhancement

Upon a finding of willful infringement, the Court may "increase the damages up

to three times the amount found or assessed." 35 U.S.C. § 284. "[T]he standard for deciding whether--and by how much--to enhance damages is set forth in Read." Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336, 1348 (Fed. Cir. 2011) (referring to Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir.1992)) (internal quotation omitted). Read examined a number of cases and listed nine factors[3] that must be considered in determining the culpability of a defendant's conduct. Id. The "paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." Id. at 1349 (quoting Read, 970 F.2d at 826).

The Court agrees with plaintiffs that they are entitled to a damages enhancement equal to three times the amount of reasonable royalty damages owed by defendants. The defendants' conduct in saving and re-using the seed was tantamount to "copying" plaintiffs' technology. Plaintiff has submitted evidence showing that defendants signed technology licensing agreements in 1998 and 2000 that expressly prohibited defendants' saving and replanting plaintiffs' seed. Thus, defendants knew of plaintiffs' patents and of plaintiffs' interest in protecting their technology. The defendants' actions were not based upon a good-faith belief that plaintiffs' patents were invalid or that the activity was not infringement. Defendants' behavior during this litigation (which resulted in their answer being stricken and their

---

[3]The Read factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. Read, 970 F.2d at 827.

default for failing to comply with the court orders) prevented plaintiffs from conducting discovery as to defendants' size and financial condition, the duration of defendants' misconduct, defendants' motivation for harm, and whether defendants attempted to conceal their misconduct. As such, any award less than the maximum statutory enhancement could turn out to benefit the defendants for their blatant disregard for the judicial process. Further, as noted in Ralph, 382 F.3d at 1381, defendants' practice of saving plaintiffs' seed could, by conservative estimates, allow defendants to increase their stock of infringing seed by a *multiplier of 70 every growing season*. Based upon the factors identified in Read, the Court finds that plaintiffs are entitled to enhanced damages totaling $1,105,102.50 ($368,367.50 reasonable royalty plus enhanced statutory damages of $736,751.00).

### C. Fees and Costs

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The criteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct, inequitable conduct, unprofessional behavior, or similar circumstances. Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GmbH, 408 F.3d 1374, 1378 (Fed. Cir.2005). "Although an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees." Spectralytics, Inc., 649 F.3d at 1349 (citing Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1379 (Fed. Cir. 2002)). The Court finds this case to be exceptional under 35 U.S.C. § 285 and that plaintiffs' are entitled to recover their attorneys' fees based upon defendants' willful infringement and litigation misconduct.

Plaintiffs' are also entitled to recover attorneys' fees because defendants have

been found liable for breach of the licensing agreement which provides for recovery of attorneys' fees.[4] David, 516 F.3d at 1016-17 (35 U.S.C. § 285 "awards attorney fees to patent holders like Monsanto, but the Technology Agreement here also does. Having violated the Technology Agreement, there is no reason why its attorney fee provision cannot be enforced."). Similarly, plaintiffs are entitled to recover costs expended in this matter under 28 U.S.C. § 1920 (listing costs that may be taxed) and the parties' licensing agreement. Id. ("the costs agreed to in the Technology Agreement are enforceable, even though those costs exceed the costs recoverable under § 1920); see also Fed. R. Civ P. 54(d)(1) (costs should be allowed to the prevailing party).

The Court will determine the amount of attorneys' fees and costs to be awarded after plaintiffs submit a verified statement detailing the fees and costs incurred in this matter. See 28 U.S.C. § 1924; Fed. R. Civ. P. 54(d).

### D. Prejudgment Interest

Prejudgment interest should ordinarily be awarded in patent cases. General Motors Corp. v. Devex Corp., 461 U.S. 648 (1983). The award, however, is not automatic. Id. "For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit. There may be other circumstances in which it may be appropriate not to award prejudgment interest." Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967 (Fed. Cir.1986). In patent cases interest is awarded "from the time that royalty payments would have been received."

---

[4]The licensing agreement states: "The grower agrees that the technology provider(s) are entitled to recover their full amount of legal fees and other costs of enforcing this Agreement." (Doc. #1-6).

General Motors, 461 U.S. at 656.

The Court finds that plaintiffs are entitled to prejudgment interest on their damages award at a rate of 9% from the date on which the defendants should have made royalty payments to the date of the judgment in this case. See Monsanto Co. v. David, 448 F.Supp.2d 1095 (E.D. Mo. 2006) (adopting a prejudgment interest rate of 9%, consistent with Mo. Rev. Stat. § 408.040(2) (2011));[5] see also Domestic Fabrics Corp. v. Sears, Roebuck & Co., 326 F.Supp.2d 694, 703 (E.D. N.C. 2004) (noting that courts look to a number of sources, including state statutes, in determining the rate and method for calculating prejudgment interest; awarding prejudgment interest on reasonable royalty damages, but not on enhanced damages under 35 U.S.C. § 284). The plaintiffs have not specified a date on which the royalty payments should have begun. However, it is alleged in the complaint---and admitted by defendants---that the saved seeds (from 2007 or earlier) were used during the 2008 planting season. It seems reasonable, then, that the royalty payments should have begun in the spring of 2008 at the latest. Accordingly, the Court will fix the starting date for prejudgment interest at March 20, 2008.[6]

### E. Injunctive Relief

Finally, plaintiffs request that the Court issue a permanent injunction prohibiting

---

[5]Mo. Rev. Stat. § 408.040(2) states "all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made."

[6] This is the date of the first day of spring in 2008. See http://www.erh.noaa.gov/box/equinox.html. (last visited November 3, 2011). This date is also within the typical planting period for cotton in the state of Texas. See http://www.nass.usda.gov/Publications/Usual_Planting_and_Harvesting_Dates/uph97.pdf. (last visited November 3, 2011).

defendants "from making, using, saving, cleaning, planting, selling, offering to sell or otherwise transferring, any of Monsanto's proprietary seed technologies, without express written permission from Monsanto." (Doc. #1). As the Supreme Court recently explained in eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006),

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. . . The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

Id. at 391 (internal quotations omitted). "These familiar principles apply with equal force to disputes arising under the Patent Act." Id. Recognizing that eBay is a substantial departure from the established injunction standard in the intellectual property context, the Federal Circuit has directed courts to refrain from the use of categorical rules, including the long-standing presumption of irreparable harm that arose from a finding of infringement. Robert Bosch LLC v. Pylon Mfg. Corp., --- F.3d ----, 2011 WL 4834266 (Fed. Cir. October 13, 2011). "While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." Id. at *5.

The Court finds that plaintiffs are entitled to a permanent injunction based upon the factors set forth in eBay. Plaintiffs have demonstrated irreparable injury that cannot be redressed through legal remedies because the nature of defendants' infringement, if left unchecked, has the potential to cause widespread proliferation of plaintiffs' technology in a way that is almost impossible to monitor and redress. The ability of plaintiffs' seed technology to rapidly self-replicate is the reason that plaintiffs

grant only limited, single-use licenses for their products. See Ralph, 382 F.3d at 1381. Furthermore, defendants' willful infringement and uncooperative conduct during this litigation demonstrates the likelihood that they will continue to infringe absent the equitable relief plaintiffs seek. Cf. Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1349 (8th Cir.1994) (history of infringement and significant threat of future infringement supports injunctive relief). For these same reasons, the Court finds that the balance of harms between the parties and the public interest also favor the entry of a permanent injunction. See McFarling, 488 F.3d at 981 (affirming permanent injunction under similar facts).

Accordingly,

**IT IS HEREBY ORDERED** that the motion by plaintiffs for default judgment [Doc. #54] is **granted**.

**IT IS FURTHER ORDERED** that plaintiffs shall, **not later than November 28, 2011,** submit a statement of attorneys' fees and costs, supported by all necessary affidavits and documentation. See Fed. R. Civ. P. 54(d).

A separate judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of November, 2011.